UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STEVE STUTTS; dba | § | |
| TEXASSALTWATERFISHING.COM, | § | |
| *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 6:13-CV-10 |
| | § | |
| TEXAS SALTWATER FISHING | § | |
| MAGAZINE, INC., | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

The Texas Gulf Coast, which stretches 367 miles from Port Arthur to Port Isabel, offers abundant opportunities for saltwater fishing. Some of the best spots are located in this division: Palacios, Port O'Connor, and Rockport, where redfish, flounder, and trout thrive. Saltwater fishing used to be considered a hobby; today, its enthusiasts view it a sport and a lifestyle. Rudy Grigar, PLUGGER: WADE FISHING THE GULF COAST at xiii (W.R. McAfee ed., 1997); Docket Entry No. 32-5 at 8.

The popularity of Texas saltwater fishing has spawned businesses, including the two involved in this lawsuit. For 17 years, Plaintiff Steve Stutts has operated a website where Texas saltwater fishing guides can advertise their services. Defendant Texas Saltwater Fishing, Magazine Inc. (TSF) distributes a magazine

that is the only print periodical devoted exclusively to Texas saltwater fishing.  The principal allegation in this lawsuit is that two TSF nameplates infringe the copyright of the logo that Stutts has displayed on his website since its inception. TSF has filed for summary judgment arguing that no juror could conclude that its works are substantially similar to Stutts's.

## I.    BACKGROUND[1]

### A. Stutts launches texassaltwaterfishing.com

In 1997, Stutts, a longtime saltwater sportsman, created texassaltwaterfishing.com as a venue for saltwater fishing guides in different regions of Texas to advertise their services.  Docket Entry No. 34-2 ¶ 2.  The logo on the front page of the website features a sunset photograph in the shape of Texas with a silhouette of a fisherman standing on the land border with Mexico.  *Id.* ¶ 4. The words "Texas Saltwater Fishing," colored a variegated green, overlay the image of Texas beginning at the Panhandle and descending so that the word "Fishing" covers West Texas.  The image is Stutts's creation: he photographed the silhouetted fisherman and, with the help of several individuals, crafted the logo. *Id.*  Since May 1997, he has been the registered owner of U.S. Copyright No. VA 1-839-038, which covers the text, content, and photographic images—including the logo—that have been a part of his website since its inception.  *Id.* ¶ 3.

---

[1] Given the summary judgment posture, the following recitation of the facts resolves all credibility determinations in Stutts's favor.



Texassaltwaterfishing.com logo.  Docket Entry No. 32-4.

**B. Gulf Coast Connections Becomes Texas Saltwater Fishing Magazine**

In 2001, Everett and Pam Johnson purchased "Gulf Coast Connections," a 24-page bi-fold newsprint tabloid dedicated to saltwater fishing in Texas.   Docket Entry No. 32-1 at 1–2.  Concerned that the name "Gulf Coast Connections" did not adequately convey their product's content, in 2003 the Johnsons renamed their magazine "Texas Saltwater Fishing Magazine" (TSF Magazine) but retained the name Gulf Coast Connections on the nameplate to prevent customer confusion. Docket Entry No. 32-5 at 12–13.  That year, the Johnsons also added an original drawing of a wade fisher—nicknamed "Plugger George"—set against a backdrop of the map of Texas.  *Id.* at 22, 24.  Finally, the Johnsons launched a companion

website, which consisted solely of bare-bones subscription content.

Beginning in 2006, the Johnsons made several important changes to TSF Magazine. First, they changed the name of the entity that owned the magazine from Lone Star Coastal Holdings, Inc. to Texas Saltwater Fishing Magazine, Inc.[2] They also renovated the texassaltwaterfishingmagazine.com website,[3] posting all prior print issues as well as each current issue online. Along with this content update, the Johnsons updated TSF Magazine's nameplate. Whereas previous versions of the nameplate had emphasized "Gulf Coast Connections," *see* Docket Entry No. 32-7, the updated version focused on the words "Texas Saltwater Fishing," diminished the size of the words "Gulf Coast Connections," and added the word "Magazine" in a cursive font.



2006 nameplate. Docket Entry No. 32-4.

This 2006 nameplate was used from August 2006 until December 2010, when the nameplate was altered again. Docket Entry No. 32-8. The new 2010

---

[2] When the Johnsons sought to incorporate Texas Saltwater Fishing Magazine, Inc., they found that a similar name—Texas Saltwater Fishing Hall of Fame—had already been registered. The owner of that registration, John Cochran, gave the Johnsons his permission to use the name, and the Johnsons were then able to name their company Texas Saltwater Fishing Magazine, Inc. Docket Entry No. 32-5 at 18–19.

[3] Though Johnson is not certain, he believes the prior URL was gulfcoastconnections.com. Docket Entry No. 32-5 at 11.

nameplate differed from the previous version in several notable ways.   Among other changes, the sunrise from the 2006 Nameplate was replaced with a plain background, and the images of the fishers and a fish at the margins of the 2006 nameplate were removed.   Additionally, in the phrase "Texas Saltwater Fishing," the words were no longer the same size—"Fishing" was now double the size of "Texas and "Saltwater."   The 2010 nameplate is still displayed on current print issues of TSF Magazine.



2010 nameplate. Docket Entry No. 32-4.

### C. The Lawsuit

In 2002, Everett Johnson placed an advertisement for his fishing guide services on texassaltwaterfishing.com.  *See* Docket Entry No. 32-11 at 13 (invoice for renewal of "Captain Everett's" advertisements dated May 31, 2002).   And in 2006, Johnson made an offer to buy the texassaltwaterfishing.com domain, which Stutts refused.   Docket Entry No. 32-9 at 24–25.  Over the next two years, Stutts received several emails from people who intended to reach TSF but instead contacted him under the mistaken assumption that his website, texassaltwaterfishing.com, was connected to TSF Magazine.   He eventually sent

Johnson a cease-and-desist letter in 2012, demanding that he and TSF "immediately cease and desist all use of" the term "Texas Saltwater Fishing Magazine," which he told Johnson "violates Texas Trademark laws and Unfair Competition laws."  Docket Entry No. 7-1 at 2.  Johnson did not comply, and the following year Stutts filed this suit.

Two claims now remain[4]: a federal copyright infringement claim based on the 2006 and 2010 TSF nameplates, and an unfair competition claim that TSF misappropriated Stutts's product and thereby gained a competitive advantage in the marketplace.  TSF argues that these claims should be dismissed, primarily on the ground that the works at issue are not substantially similar.  It also argues that the doctrine of laches bars the lawsuit because Stutts did not file suit until 2013.

## II.   STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[4] Stutts's original complaint also included a trademark infringement claim based on TSF's alleged infringement of the phrase "TEXAS SALTWATER FISHING."  However, he conceded at his deposition on November 15, 2013—the discovery cutoff date—that he had no protectable interest in that phrase.  He then sought to amend his complaint, over TSF's objection, to include a trademark infringement claim based on the phrase "TEXAS SALTWATER FISHING" and the logo accompanying it.  The Court denied the motion, Docket Entry No. 28, but allowed Stutts's wholly-owned company, Howerton & Stutts, Inc., to be added as a plaintiff in the event that it, rather than Stutts, is the proper plaintiff in this case.   The Court also allowed Stutts to assert a state law unfair competition claim.  Stutts then filed a Second Amended Complaint, Docket Entry No. 31, that abandoned the trademark infringement claim and instead made the two claims—copyright infringement and unfair competition—that are now before the Court on TSF's summary judgment motion.

56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment.  *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III.   COPYRIGHT INFRINGEMENT

### A. Substantial Similarity Standard

To establish a prima facie case of copyright infringement, Stutts must show (1) that he owns a valid copyright; and (2) that TSF copied constituent elements of Stutts's work that are original.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).  TSF contests the latter, "actionable copying" requirement.  *See* Docket Entry No. 32 at 19 n.11 (noting that while "TSF Magazine does not concede that Stutts has established ownership of a valid copyright. . . . for the purposes of this motion, TSF Magazine focuses on the second element, actionable copying").  "Actionable copying" has two further components: (a) factual copying—that is, a showing that the defendant "actually used the copyrighted material to create his own work"; and (b) "that the allegedly infringing work is substantially similar to protectable elements of the infringed work."  *Lee*, 379 F.3d

at 141–42 (citations and internal quotation marks omitted).  Whether the works are substantially similar is the central dispute of this case.[5]

Though circuit courts are divided on how to determine substantial similarity, *compare Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (applying the "ordinary observer test": "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work" (citations and internal quotation marks omitted)), *with Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990) (utilizing an "extrinsic/intrinsic test"), the Fifth Circuit's approach, borrowing from the Second Circuit's, is well-established: "[a] side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar." *Lee*, 379 F.3d at 142 (internal citation and quotation marks omitted).  How similar must the works be to meet the "substantial similarity" standard?  Acknowledging that the standard is "of necessity vague," Judge Learned Hand explained that infringement exists if an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).  Though "the question whether two works are substantially similar

---

[5] In its reply brief, TSF argues that Stutts has also failed to provide evidence of factual copying. Docket Entry No. 36 at 10–12. But because the Court can resolve the copyright infringement claim on other grounds, and TSF did not address the factual copying requirement in its initial summary judgment motion, the Court need not reach this issue.

should be left to the ultimate factfinder, . . . summary judgment may be appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression.'" *Lee*, 379 F.3d at 142.

### B. 2010 Nameplate

Because of the numerous and readily apparent differences between TSF's 2010 nameplate and Stutts's logo, no ordinary observer could "regard the aesthetic appeal [of the works] as the same." *R. Ready Prods. v. Cantrell*, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000) (citations and internal quotation marks omitted). One of the primary reasons for this is that the Court can consider only the protectable elements of Stutts's work. *See Rucker v. Harlequin Enters., Ltd.*, 2013 WL 707922, at *5 (S.D. Tex. Feb. 26, 2013) ("A party claiming infringement may place '*no* reliance upon any similarity in expression resulting from' unprotectable elements.'" (emphasis in original) (quoting *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994))). The Court cannot find a fact issue on substantial similarity merely because both images feature the state of Texas or the words "Texas Saltwater Fishing"; neither the image of Texas nor the words "Texas Saltwater Fishing" are eligible for copyright protection. *See* 37 C.F.R. § 202.1(a) (listing "[w]ords and short phrases such as names, titles, and slogans [and] familiar symbols or designs" as "works not subject to copyright"); *Kerr v. New York*

*Magazine, Inc.*, 63 F. Supp. 2d 320, 325 (S.D.N.Y. 1999) ("[T]he unprotectable elements of the image must be excluded from consideration.").  Rather than the idea itself, it is the way that idea is expressed, such as its overall arrangement, which must be substantially similar.  *Cf. Golan v. Holder*, 132 S. Ct. 873, 890 (2012) ("[E]very idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication; the author's expression alone gains copyright protection."); *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 789 (S.D. Tex. 2009) (denying reconsideration of dismissal of copyright infringement claim brought against author of allegedly infringing novel in part because similarities between the two works "were either insignificant or involved unprotectable elements.").

The 2010 nameplate and Stutts's logo express their ideas very differently, starting with the image of Texas.  And for businesses attempting to build support among the Texas fishing community, this is no small detail.  In the 2010 nameplate, Texas is relatively small, colored blue, and overshadowed by the size of the "Texas Saltwater Fishing" text.  By contrast, Stutts's imagining of Texas—a photograph of an orange sunrise reflected by the ocean that is cropped into the shape of the State —not only dominates the logo, but comprises the entirety of the logo.  Even the phrases "Upper Coast," "Middle Coast," and "Lower Coast," arranged along the Texas Gulf Coast, highlight Texas's centrality.

The fishermen in these two works are also distinct both in terms of where they are fishing and how.  "Plugger George," the 2010 nameplate's wade fisher, is positioned on the Gulf Coast, near Texas's Rio Grande Valley region, and he covers a significant portion of Texas, as do the ripples from the water surrounding him.  By contrast, Stutts's fisherman is positioned on the Southwestern land border with Mexico, and he covers a much smaller territory of Texas.

Another important distinction is what the two fishermen are doing. Plugger George is so named because he is an angle fisher who uses a plug-style lure.  His back is arched and his fishing line is bent because of the weight of the fish he struggles to catch.  As he tries to reign in the fish, the water beneath him ripples. Meanwhile, Stutts's fisherman is peaceful as he fishes; the water barely moves beneath him.  He does not appear to be struggling with his catch, because otherwise, his fishing line would not be almost perpendicular to his body.  And of course, Plugger George is part of a two-color drawing, while Stutts's fisherman is a silhouette in a photograph.

If those differences were not enough, the two logos also have discordant fonts.  In the 2010 nameplate, the words "Texas Saltwater Fishing" are set in black text to the right of Texas.  The word "Fishing" is printed in significantly larger letters than "Texas" or "Saltwater" and its curled "S" resembles a fishhook.  In Stutts's logo, "Texas Saltwater Fishing" is colored variegated green. The words, all

the same size, are displayed over the Texas Panhandle.  About the only similarity in terms of how the words "Texas Saltwater Fishing" are displayed in these two works is that both put them in all capital letters.

Given these numerous and significant differences between the 2010 nameplate and Stutts's logo, which far outweigh their similarities, no reasonable jury could find that the two works are substantially similar.  *See Randolph*, 634 F. Supp. 2d at 788–89 ("As a matter of logic as well as law, the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated by the other." (quoting *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980)); *cf. Rucker*, 2013 WL 707922, at *9 (granting summary judgment on copyright infringement claim because "comparisons of scenes, events, and characters between" plaintiff's romantic novel and allegedly infringing work showed that similarities were "common in romance novels").

### C. 2006 Nameplate

Although the comparison between the 2006 nameplate and Stutts's logo is not quite as easy a call, it remains the case that there are too many differences to lead to a conclusion that the works have the same aesthetic appeal.

At the outset of this comparison, the Court notes that the 2006 nameplate and the 2010 nameplate are generally similar, with only three notable distinctions:

the 2006 nameplate features (1) a sunrise backdrop; (2) images of people fishing (and a fish) on the left and right margins; and (3) an uncapitalized smaller white font that spells out "Texas Saltwater Fishing Magazine" immediately to the right of Texas.[6]  While these changes, cumulatively, evoke a closer connection to Stutts's logo than the 2010 nameplate, they do not constitute sufficient similarity from which a jury could find infringement.

For the same reasons that the Court removed from its consideration the image of Texas and the words "Texas Saltwater Fishing" when addressing the 2010 nameplate, the Court cannot find potential substantial similarity solely on the basis that both the 2006 nameplate and Stutts's logo feature a sunrise.  Images of a sunrise or sunset are often used in fishing photos, and such standard "*scenes à faire*" are unprotected.  *See Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 638 (S.D. Tex. 2007) ("Unprotected aspects also include 'scenes a faire,' which are stock, standard, or common elements of a photograph that 'necessarily result from the choice of a setting or situation." (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986)); *see, e.g.*, Docket Entry Nos. 32-18, 32-21, 32-22 (containing numerous photographs from magazines and advertisements of people fishing at sunrise).  Therefore, three core elements of Stutts's logo are unprotected:

---

[6] There are two other, more minor distinctions that do not alter the Court's analysis: in the 2006 nameplate, Plugger George is standing entirely in the Gulf of Mexico, rather than with his heels on land, and the ripples around his knees are not as far-reaching.  These differences do not diminish the overall effect that Plugger George is intended to have on the viewer, nor do they make the 2006 nameplate and Stutts's logo any more similar.

the image of Texas, the words "Texas Saltwater Fishing," and the sunrise background.

The Court must thus look beyond the separate, unprotected elements to consider similarities in the overall arrangement of those elements in the two works. And this is where Stutts falls short. Though the subject of the logo and the subjects of the 2006 nameplate are all fishing, the way that they go about it is not at all alike. As established above, Plugger George is not similar to Stutts's fisherman because, among other reasons, he struggles to corral his catch while the fisherman exhibits no outward signs of duress. Rather, he exudes calm. The sunrise in Stutts's logo, in contrast with the blue imagining of Texas in both the 2010 and 2006 nameplates, enhances this dichotomy by highlighting the fisherman's serene nature.

Three other individuals are shown fishing in the 2006 nameplate—two on the left side of the nameplate and one on the far right all contained in a rectangular frame. They are thus not the center of the viewer's attention, as Stutts's fisherman is. And though they are not as animated as Plugger George, neither are they particularly similar to the fisherman in Stutts's logo: the fisher on the far left has a bent fishing line and appears to have her hair up in a bun; the fisher slightly to her right is sitting in a kayak with a life vest inflated on his back; and the fisher on the far right is standing with water almost up to his waist, with his fishing line nearly

parallel to his body.  And most obviously, the fish in the lower left-hand corner of the 2006 nameplate bears no resemblance to any image in Stutts's logo.

Finally, the 2006 nameplate's font is more similar to the font in Stutts's Logo than the 2010 nameplate's font because each word (except for "Magazine") is the same size.  But otherwise, several key differences between the 2006 nameplate's font and the logo's font remain.  First, the fonts are not the same color—white in the 2006 nameplate compared with variegated green in the logo. Second, in the 2006 nameplate, "Texas Saltwater Fishing" is spelled out in one line to the right of Texas, whereas in the logo, the words are displayed stacked on top of each other directly over Texas.  And third, the 2006 nameplate is not in all capital letters, whereas the logo is.  Thus, there is only one main similarity—the fact that both works give equal weight to the words "Texas Saltwater Fishing"— and that cannot alone create a fact issue.

Indeed, these two works have fewer commonalities than existed between other visual displays that courts still have found failed to meet the infringement standard as a matter of law.  For instance, a federal district court in New York granted summary judgment on a copyright infringement claim despite the fact that both works at issue portrayed a male figure with a mohawk of the New York skyline.  The determinative factor was that the two figures had "an entirely different 'concept and feel'" because, unlike in other cases finding a fact issue on

substantial similarity, the defendant had not copied the plaintiff's style—only, at worst, the "'idea' of a punk with a skyline haircut." *See Kerr*, 63 F. Supp. 2d at 325–26. And in a case out of this District, the court granted summary judgment on a copyright infringement claim even though both photographs depicted Arnold Palmer in a similar pose. Differences in facial expressions, lighting, and angles proved decisive. *See Straus*, 484 F. Supp. 2d at 636–39. Finally, the First Circuit found no substantial similarity between two photographs depicting a daughter riding piggyback on her father's shoulders because of "differences in background, lighting and religious detail." *See Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 186–88 (1st Cir. 2013). The differences between the 2006 nameplate and Stutts's logo—without more expressive similarities—are thus too great to permit a reasonable factfinder to conclude that the works are substantially similar.

## IV. UNFAIR COMPETITION

The final issue that the Court must resolve is Stutts's state law unfair competition claim: that TSF unlawfully misappropriated his logo and derived an unfair economic advantage as a result. "The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied) (quoting *Am. Heritage Life Ins. Co. v.*

*Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)).  "Within the broad scope of unfair competition are [] independent causes of action," including, among others, misappropriation.[7]  *Id.*  To recover on this claim, Stutts must show: "[1] the creation of [a] product through extensive time, labor, skill and money, [2] [TSF's] use of that product in competition with [Stutts] . . . , and [3] commercial damage."  *Id.* at 218.

The summary judgment briefing, which does not focus on this claim at length, does not convince the Court that this claim fails as a matter of law.  But dismissal of the federal copyright claims requires the Court to consider a more basic question: whether it is a wise exercise of this Court's discretion to retain jurisdiction over a single state-law claim.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966) ("[T]he issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation.").  In exercising its discretion to decline jurisdiction over such state law claims, the Fifth Circuit counsels that courts should consider the four statutory factors listed in 28 U.S.C. § 1367(c) as well as the common law factors the Supreme Court discussed in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988).  *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011).  The statutory factors are "(1) whether

---

[7] Misappropriation is thus the independent tort for which Stutts seeks to recover.  *See Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (explaining that unfair competition claims require a predicate independent tort).

the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction." *Id.* at 159 (citing 28 U.S.C. § 1367(c)). The common law factors are "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon*, 484 U.S. at 350. The court has "wide discretion" in deciding whether to exercise jurisdiction over state law claims. *Enochs*, 641 F.3d at 161 (quoting *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999)).

At least three facts favor the Court declining to exercise jurisdiction. First, the normal course when all federal claims have been dismissed prior to trial is to decline jurisdiction over the remaining state law claim. *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute; no single factor is dispositive . . . ." (citation omitted)). Second, the unfair competition claim was added recently, and thus neither the parties nor the Court have devoted significant resources to it. And discovery was bifurcated into liability and damages phases, so the unfair competition claim is not ready for trial in this Court. Finally, the claim raises issues of state law that would be better left to a state court to resolve. For instance, to prove misappropriation,

Stutts must show that he created a "product" that he spent "extensive time, labor, skill, and money" developing. *U.S. Sporting Prods.*, 865 S.W.2d at 218. Stutts testifies that he took the picture of the silhouetted fisherman and played a large role in developing the logo, but does that constitute "extensive time, labor, [and] skill"? There is surprisingly little Texas case law explaining that requirement, or the other aspects of misappropriation. The wisest course is thus for the Court to decline jurisdiction under section 1367(c) so that those issues can be resolved in state court if Stutts elects to pursue an unfair competition claim against TSF in that forum.[8]

## V.   CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment (Docket Entry No. 32) on Plaintiffs' copyright infringement claim is **GRANTED** and Plaintiffs' unfair competition claim is **DISMISSED WITHOUT PREJUDICE**. A separate final judgment will issue.

**SIGNED** this 18th day of April, 2014.

_____
Gregg Costa
United States District Judge

---

[8] Because the Court is granting summary judgment on the copyright infringement claim and dismissing the unfair competition claim under section 1367(c), the Court need not reach TSF's arguments that laches and the statute of limitations bar Stutts's claims.